**SO ORDERED.**

**SIGNED May 12, 2010.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE:

CLK ENERGY PARTNERS, LLC                    CASE NO. 09-50616

    Debtor                                  Chapter 7
----------------------------------------------------------------

JOHN W. LUSTER, TRUSTEE
FOR THE BANKRUPTCY ESTATE
OF CLK ENERGY PARTNERS, LLC

VERSUS                                      ADVERSARY NO. 09-05042

GREENHILL CAPITAL
PARTNERS II, L.L.P., ET AL

----------------------------------------------------------------
MEMORANDUM RULING
----------------------------------------------------------------

    John W. Luster, the duly appointed Chapter 7 Trustee for the bankruptcy estate of **CLK ENERGY PARTNERS, LLC** ("CLK"), brought this adversary proceeding against former members, officers, and managers of CLK. The Trustee asserts federal bankruptcy and state law

claims against these defendants.  The present matters before the court are two motions filed by the defendants: (1) A Motion for More Definite Statement (the "Greenhill Motion") filed by defendants **GREENHILL CAPITAL PARTNERS II, L.L.P., GREENHILL CAPITAL PARTNERS (Cayman) II, L.L.P., GREENHILL CAPITAL PARTNERS (Executives) II, L.L.P., GREENHILL CAPITAL PARTNERS (Employees) II, L.L.P., FRANK POTTOW, CHRISTOPHER ORTEGA,** and **RALPH BAILEY** (collectively, "Greenhill" or the "Greenhill defendants"), and (2) a Motion for Partial Dismissal for Failure to Comply with FRCP (9)(b) and for a More Definite Statement (the "Choctaw Motion") filed by **CHOCTAW PRODUCTION COMPANY, LLC, RICHARD J. GARDNER, BRENT KOVACH, ROLAND R. LONDOT**, and **ROBERT E. McKEE, III** (collectively, "Choctaw" or the "Choctaw defendants").  The court took these motions under advisement following a hearing on March 2, 2010.  After considering the parties' submissions, arguments, and relevant authorities, the court rules on the motions as follows.

BACKGROUND

CLK is a Delaware limited liability company formed on May 20, 2005, for the purpose of acquiring, developing and operating oil and gas leases and marketing and selling the hydrocarbon acquired from those leases.  The initial members of CLK were Greenhill, Rock Creek and Choctaw.  CLK's Operating Agreement designated Choctaw as the "Management Member" and Rock Creek and Greenhill as the

-2-

"Investor Members." The Operating Agreement further provided that CLK's board of managers would consist of two managers appointed by Choctaw and three managers appointed by Greenhill. Greenhill appointed as its representatives on CLK's board defendants Pottow, Ortega and Bailey. Choctaw designated defendants McKee and Gardner as its representatives on CLK's board. Greenhill and Rock Creek initially contributed $9.5 million in cash to CLK, and Choctaw contributed $2 million in property to CLK. The Trustee alleges that Greenhill and Rock Creek were obligated to make a second capital contribution of $9.5 million. Greenhill contends that the second capital contribution could not be requested before May 20, 2007, pursuant to Section 4.5 of CLK's Operating Agreement.

In May 2006, CLK's board of managers signed a "Consent of Managers" directing CLK to cease operations and expenditures. Nevertheless, the Trustee contends that defendants Gardner, Kovach, McKee and Londot "continued to engage in prohibited transactions resulting in damage to [CLK]." (Complaint at ¶ 14) Specifically, the Trustee alleges that CLK subsequently entered into a Joint Operating Agreement with Petroquest and other third parties that obligated CLK to pay a portion of the cost of drilling the La Posada Well Prospect. According to the Trustee, the defendants knew that CLK could not satisfy its financial commitments under the Joint Operating Agreement.

-3-

In October 2006, Choctaw agreed to purchase Greenhill's membership interest in CLK and further agreed to assume all duties, liabilities, and obligations arising from Greenhill's membership interest in CLK. In connection with the sale, the parties executed a mutual release that released Greenhill's contribution obligations under the Operating Agreement. The Trustee alleges that Choctaw compelled CLK to provide security for a $2.5 million line of credit needed to fund Choctaw's purchase of Greenhill's interest.

The La Posada Well Prospect was not successful. Petroquest and CLK's other partners in the La Posada Well Prospect filed lawsuits in state court against CLK when it failed to pay its share of the costs of drilling the well. On May 8, 2009, CLK was placed into involuntary bankruptcy by Petroquest and other creditors. The order for relief was entered on May 29, 2009. The case was subsequently converted to a case under Chapter 7.

The Trustee subsequently commenced the present adversary proceeding seeking to recover unpaid capital contributions from Greenhill and Rock Creek pursuant to sections 542(b) and 544(b)(1) of the Bankruptcy Code. The Trustee also asserts state law alter ego and breach of fiduciary duty claims against the defendants.

## DISCUSSION

### A. Applicable Pleading Standards

The Greenhill and Choctaw Motions challenge the sufficiency of the Complaint under Rules 8(a) and 9(b) of the Federal Rules of

-4-

Civil Procedure. The Greenhill defendants move for a more definite statement under Rule 12(e) with respect to Counts 1, 3, and 5 of the Complaint. The Choctaw defendants move for a more definite statement with respect to Counts 4 and 5, and partial dismissal under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 8(a) requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." A claim satisfies the notice pleading standard of Rule 8(a) if the allegations in the complaint "give the defendant fair notice of what the claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed. 2nd 80 (1957). As the Supreme Court has recently cautioned, however, a plaintiff must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Although the complaint need not include detailed factual allegations, the complaint must include sufficient factual allegations (taken as true) to raise "a right to relief above the speculative level." Id. Rule 9(b) imposes additional requirements for pleading claims of fraud. Rule 9(b) requires the plaintiff to plead the circumstances constituting fraud with particularity. See Fed R. Civ. P. 9(b); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994). To satisfy Rule 9(b), a plaintiff must allege the identity of the

-5-

person making a fraudulent statement, the time, place and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated. <u>Tuchman</u>, 14 F.3d at 1061. This standard requires sufficient factual detail to lend some measure of substantiation to a claim that the defendant committed fraud. <u>Id</u>. Rule 9(b) applies not only to fraud claims, but also to "non-fraud" claims that are based upon allegations of fraud. For example, a breach of fiduciary duty claim is not generally subject to Rule 9(b). However, if a breach of fiduciary duty claim is grounded in whole or in part on allegations of fraud, the fraud allegations must comply with Rule 9(b).

Courts have traditionally viewed Rule 12(e) motions with disfavor given the liberality of notice pleading and the availability of discovery to obtain the information needed for a party to present its case. <u>See</u>, <u>e.g.</u>, <u>Mitchell v. E.Z. Way Towers, Inc.</u>, 269 F.2d 126, 132 (5th Cir. 1959); 5A C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1377 (2nd ed. 1990). Relief under Rule 12(e) is limited to cases where the "complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed." <u>Beanal v. Freeport-McMoran, Inc.</u>, 197 F.3d 161, 164 (5th Cir. 1999).

**B. Count 1 -- Section 542 and Section 544(b)**

The Greenhill Motion first challenges Count 1 of the Complaint. In Count 1, the Trustee seeks to recover a debt owed to

-6-

the estate pursuant to 11 U.S.C. § 542(b).  (Complaint at ¶ 21.)
The Trustee also seeks to "avoid the transfers involved in [the sale of Greenhill's interest in CLK], specifically the release of Greenhill from its capital contribution obligation," pursuant to 11 U.S.C. § 544(b).  (Complaint at ¶ 22.)  Greenhill contends that the allegations in Count 1 do not provide adequate notice of the claims asserted against them.  Greenhill contends that the Trustee's allegations are vague and conclusory as to how "unpaid capital contributions" constitute a debt to the estate that is recoverable under section 542(b).  Greenhill also challenges the avoidance allegations of Count 1 on the grounds that the Trustee fails to plead sufficient facts to support an avoidance claim under Section 544(b).  Finally, Greenhill contends that Count 1 is unclear as to whether the Trustee is seeking to avoid a transaction under 11 U.S.C. § 548.

Section 542(b) of the Bankruptcy Code provides that:

> "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may offset under Section 553 of this title against a claim against the debtor."

In paragraphs 19 through 21 of the Complaint, the Trustee alleges that the Greenhill entities owe CLK approximately $8.5 million in capital contributions, that these unpaid capital contributions are an asset of CLK's bankruptcy estate, and that the unpaid

–7–

contributions "constitute a debt to the estate that is matured, payable on demand, or payable on order." Greenhill points to a key hurdle for the Trustee: Greenhill sold its membership interest in CLK and was released from its contribution obligations almost tree years prior the commencement of the bankruptcy case. The Trustee's section 544(b)(1) allegations in paragraphs 22 through 27 of the Complaint appear to address this hurdle by alleging grounds to avoid the release. Although this linkage is not explicit in the current Complaint, the Trustee's response to the Greenhill and Choctaw Motions includes additional proposed allegations seeking to clarify this link:

> The unpaid capital contributions are assets of the estate pursuant to §541(a)(1), as CLK received no consideration for the purported release of Greenhill's $8,5000,000.00 contribution obligation in connection with the sale to Choctaw in October, 2006, as set fort [sic] in Paragraph 16 of this petition, *supra*, and **the Trustee can avoid the transaction and release between Greenhill and Choctaw whereby Choctaw purported to assume the $8,500,000 contribution obligation Greenhill had to CLK**.

> Accordingly, the Trustee is the owner of the right to demand a capital contribution from Greenhill. **Since the release is avoidable by the trustee, the release of Greenhill's obligations under the operating agreement is void (or voidable) and the trustee has the right to demand Greenhill make its contributions under the Operating Agreement**.

The Trustee's response also proposes to amend the Complaint to clarify that the $8.5 million capital contribution obligation

-8-

arises from the CLK Operating Agreement. Considering the allegations in the Complaint and the Trustee's response, the court concludes that the Trustee's proposed amendments – once they are included in an amended complaint – will sufficiently cure the ambiguity in the Complaint with respect to the Trustee's section 542(b) claim.

The Trustee's section 544(b) allegations, however, do not satisfy Rule 8(a) because they fail to identify the non-bankruptcy law upon which the Trustee's section 544(b) claim is grounded. Under Section 544(b) the trustee has the right to avoid any transfer of an interest of a debtor in property or any other obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an allowable unsecured claim. 11 U.S.C. §544(b)(1). A trustee's avoidance powers under section 544(b) are derived from non-bankruptcy law. The Trustee's allegations in paragraphs 22 through 27 appear to assert the factual grounds to avoid a transaction, but do not identify the applicable non-bankruptcy law that provides the basis for avoidance. While Rule 8(a) does not require a plaintiff to plead his or her legal theories in detail, the rule does require "fair notice of what the claim is ...." Otherwise, a defendant would have no basis to determine the required elements of the plaintiff's claim and to frame a response to that claim. Here, the Greenhill defendants cannot reasonably be expected to frame a response to the

-9-

Trustee's section 544(b) claim without notice of the non-bankruptcy law predicate for his section 544(b) claim. The court, therefore, grants the Greenhill Motion with respect to Count 1. The court orders the Trustee to re-plead Count 1 by (1) adding the supplemental allegations set forth in the Trustee's response, and (2) identifying the non-bankruptcy law that serves as the basis for the Trustee's section 544(b) claim. To the extent that the non-bankruptcy law relied upon by the Trustee includes fraud as an element of the claim, the Trustee must satisfy the requirements of Rule 9(b).

Finally, Greenhill points to allegations in the Complaint that could be an attempt to plead an avoidance claim under 11 U.S.C. § 548. Greenhill contends that it has grounds to attack a section 548 claim with a dispositive motion and argues that Count 1 should be re-pled to clarify whether the Trustee is seeking relief under section 548. Greenhill's argument with respect to section 548 does not present grounds for relief under Rule 12(e). The Complaint does not cite section 548 as a ground for relief. Count 1 of the Complaint explicitly references only sections 542(b) and 544(b), and the avoidance allegations in Count 1 appear to relate to the Trustee's section 544(b) claim. Except as noted above, Rule 8(a) requires no more. Any danger that the Trustee will attempt to pursue a stealth section 548 claim based on his current pleadings is adequately addressed by Rule 8(a) because the Trustee will not

-10-

be able to recover on a claim that has not been pled in conformity with Rule 8(a).

## C.  Count 3 – Section 544(a)(1)

The Greenhill Motion also challenges Count 3 of the Complaint. In Count 3, the Trustee alleges that he "possesses the rights and powers of a creditor that extends credit to the debtor at the time of the commencement of the case" pursuant to Section 544(a)(1), including a creditor's rights under Louisiana Revised Statute 12:1322.  (Complaint at ¶ 36.)  The court agrees with Greenhill that Count 3 does not satisfy the "fair notice" requirement of Rule 8(a).[1]  Section 544(a)(1) gives the Trustee the "rights and powers" of "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien...."  11 U.S.C. § 544(a)(1).  La. R.S. 12:1322 provides a creditor of a Louisiana LLC with certain rights to enforce the

---

[1]Greenhill also challenges the applicability of La.R.S. 12:1322 to a Delaware limited liability company ("LLC").  The Trustee cites La.R.S. 12:1347, which imposes the same "duties, restrictions, penalties, and liability" on a foreign LLC which receives a certificate of authority as a domestic LLC.  The applicability of La. R.S. 12:1322 to a Delaware LLC is a question of law that is not appropriate for a motion under Rule 12(e). This issue is more appropriate for a motion to dismiss or other dispositive motion.

contribution obligations of the LLC's members. La. R.S. 12:1322B
governs cases where a member is unable to comply with a
contribution obligation due to "death, disability, or other
reason." La. R.S. 12:1322C governs the release of a member's
contribution obligations. Under both provisions, certain creditors
who extend credit to the LLC after a member of the LLC enters into
a contribution obligation have a right to enforce the original
contribution obligation "to the extent that the limited liability
company refuses or is unable to honor the extension of credit."
La. R.S. 12:1322C. It is not clear from the Trustee's pleadings
how the power to step into the shoes of a judicial lien creditor
under Section 544(a)(1) for purposes of avoiding a transaction
confers standing on the Trustee to exercise a creditor's rights
under La. R.S. 12:1322B and 12:1322C. <u>See</u> <u>Highland Capital</u>
<u>Management LP, et al v. Chesapeake Energy Corp. (In re Seven Seas</u>
<u>Petroleum, Inc.)</u>, 522 F.3d 575, 584 (5th Cir. 2008) (holding that
a "trustee has no right to bring claims that belong solely to the
estate's creditors"). The Trustee also does not plead grounds for
relief under the provisions of La. R.S. 12:1322, including
allegations showing an extension of credit. The court therefore
**GRANTS** Greenhill's request for a more definite statement with
respect to Count 3.

### D. Count 4 -- Alter Ego

The Choctaw Motion challenges the Trustee's alter ego
allegations in Count 4 of the complaint. In Count 4, the Trustee

-12-

alleges that "Choctaw and [CLK] were mere alter egos of their principals, namely Gardner, Kovach, McKee and Londot," and that these individual defendants were "personally liable for the debts of the Estate." (Complaint at ¶¶ 52-53.) The Trustee alleges that Choctaw and CLK were undercapitalized and merely corporate shells dominated and controlled by defendants Gardner, Kovach, McKee and Londot. The Trustee further alleges that Gardner, Kovach, McKee and Londot made material misrepresentations to CLK's La Posada partners regarding CLK's ability to pay its share of the costs arising from the prospect and CLK's authority to enter into the La Posada Joint Operating Agreement. Choctaw argues that these allegations do not support an alter ego claim.

The court must first address which state's law applies to the Trustee's alter ego claim. In Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941), the Supreme Court held that a court must apply the choice- of-law rules of the forum in which it sits for state law claims when the court's jurisdiction is grounded on diversity of citizenship. Unlike Klaxon, the present matter is grounded on bankruptcy jurisdiction and involves federal bankruptcy claims in addition to state law claims. On the other hand, the alter ego doctrine is a state law remedy. Although the court is not bound by Klaxon in the present case, the bankruptcy courts typically apply the choice-of-law rules of the forum state in

-13-

cases involving state law claims that do not implicate federal policy. <u>Woods-Tucker Leasing Corp. of Ga. v. Hutches on-Ingham Dev. Co.</u>, 642 F.2d 744, 748 (5th Cir. 1981). Louisiana courts have not explicitly ruled on the appropriate choice of law for alter ego claims. Nevertheless, the Fifth Circuit has predicted that Louisiana courts would look to the law of the state of formation. <u>Lone Star Industries, Inc. v. Redline</u>, 757 F.2d 1544, 1548 n.3 (5th Cir. 1985) (citing <u>QuickC, Inc. v. QuickC International</u>, 304 So.2d 402, 406-07 (La. App.), writ denied 305 So.2d 123 (1974)). This choice-of-law rule is consistent with the Restatement as well as the choice-of-law rules of other jurisdictions. <u>See</u> Restatement (2nd) of Conflicts of Law §307 (1971); <u>Malt v. Union Carbide Chemicals and Plastics Co.</u>, 992 F. Supp. 286, 300 (S.D.N.Y. 1998) (applying the law of the state of formation). In the present case, the court will look to Delaware alter ego jurisprudence because CLK is a Delaware LLC.[2]

---

[2]The Complaint also appears to include veil piercing allegations with respect to Choctaw Producing Company, LLC. Since Choctaw is a Louisiana LLC, Louisiana law would apply to an alter ego claim involving Choctaw. However, the gravamen of Count 4 is a request to pierce **CLK's** LLC structure and "to hold Choctaw, Gardner, Kovach, McKee, and Londot personally liable" for CLK's debts based on allegations that CLK and the Choctaw defendants were alter egos. As the Complaint is currently framed, the Trustee cannot prevail on Count 4 if he cannot establish grounds to pierce CLK's LLC structure under Delaware law. Accordingly, the court will look to Delaware alter ego jurisprudence for purposes of addressing the Choctaw Motion.

-14-

To prevail on an alter ego claim under Delaware law, the Trustee must show (1) that the individual defendants, Choctaw, and CLK "operated as a single economic entity" and (2) that an "overall element of injustice or unfairness...[is] present." Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076, 1085 (D.Del. 1990); Fletcher v. Atex, Inc., 68 F.3rd 1451, 1457 (2nd Cir. 1995). The requisite element of "injustice or unfairness" requires that a plaintiff plead facts showing that the "corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." Official Committee of Unsecured Creditors of RSL COM PRIMECALL, Inc. v. Beckoff (In re RSL COM PRIMECALL, Inc.), 2003 WL 22989669 at *15 (Bankr. S.D.N.Y. December 11, 2003) (citing United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1105-07 (D. Del. 1988)). While RSL suggests that a showing of fraud is required to support an alter ego finding, Delaware courts have held that inequitable conduct that does not rise to the level of fraud can support an alter ego finding. Wallace v. Wood, 752 A. 2nd 1175, 1184 (Del. Ch. 1999) (fraud or similar injustice must be demonstrated in order to pierce the corporate veil under Delaware law). Delaware courts have also held that the alter ego jurisprudence developed in cases involving corporations similarly applies to Delaware LLC's. See Trustees of Village of Arden v. Unity Construction Co., 2000 WL 130627 at *3-4 (Del. Ch. Jan. 26, 2000).

-15-

The Trustee addresses the first prong of the alter ego doctrine – that CLK and the Choctaw defendants operated as a "single economic entity" – by alleging that CLK and Choctaw were insolvent and/or undercapitalized at the time CLK entered into the La Posada Joint Operating Agreement, and that the Choctaw defendants failed to maintain corporate formalities. With respect to the first prong of the alter ego doctrine, these allegations satisfy the requirements of Rule 8(a) in that they provide the defendants with fair notice of the basis for the Trustee's claim. The Trustee's allegations with respect to the second prong of the alter ego doctrine – a showing of fraud or inequitable conduct – do not fare as well. Delaware courts have held that the fraud or inequitable conduct necessary for alter ego liability must arise from a misuse of the corporate form and not the underlying cause of action. See Mobile Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 268-69 (D. Del. 1989) (explaining that "the underlying cause of action does not supply the necessary fraud or injustice" to support an alter ego claim). As a result, proof of an underlying tort or contract claim against a corporate defendant does not, standing alone, support an alter ego finding against the corporation's principals. The Trustee appears to address the second prong of the alter ego doctrine by relying on alleged material misrepresentations pled in paragraph 49 of the

-16-

Complaint involving Petroquest and CLK's La Posada partners.[3]  The Complaint, however, fails to tie these alleged misrepresentations to a misuse by each of the Choctaw defendants of the limited liability afforded by CLK's LLC form.  In other words, while these allegations might support an underlying fraud claim, they do not support a finding that CLK was "a sham and exist[ed] for no other purpose than as a vehicle for fraud." In re RSL COM PRIMECALL, Inc., 2003 WL 22989669 at *15 ("To survive a motion to dismiss, a plaintiff must allege facts that the controlling owners operated the company as an 'incorporated pocketbook' and used the corporate form to shield themselves from liability.")

Furthermore, even if these fraud allegations did establish a misuse of the corporate form, they do not satisfy the pleading requirements of Rule 9(b).  When a fraud claim is asserted against multiple defendants, Rule 9(b) requires specific allegations detailing the allegedly fraudulent conduct of *each defendant*. See, e.g., Haskin v. R. J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1440 (N.D. Fla. 1998); Sears v. Likens, 912 F. 2nd 889, 893 (7th Cir. 1990).  A complaint cannot group all defendants into "one wrongdoing monolith." First American Bank & Trust by Levitt v. Frogel, 726 F. Supp. 1292, 1295 (S.D. Fla. 1989).  To satisfy Rule 9(b), a

---

[3]  The Complaint does not appear to assert separate fraud claims against the Choctaw defendants based on the allegations in paragraph 49.

plaintiff must allege the specific misrepresentations made by each defendant, including the context (time and place) and content of each alleged misrepresentation. <u>Haskin</u>, 995 F. Supp. at 1440. The Trustee's fraud allegations do not satisfy this requirement. Accordingly, the court **GRANTS** the Choctaw Motion and orders that the Trustee re-plead the allegations supporting Count 4 of the Complaint.

### D. Count 5 -- Breach of Fiduciary Duty

Finally, both Greenhill and Choctaw challenge the Trustee's breach of fiduciary duty claims in Count 5 of the Complaint. The Trustee contends that Gardner, McKee, Pottow, Ortega, and Bailey breached their fiduciary duties as managers of CLK by authorizing and executing the sale of Greenhill's interest in CLK and by approving the release of Greenhill's contribution obligations. According to the Trustee, these individual defendants knew that CLK could not continue to operate without these capital contributions, and that the October 2006 sale and release left CLK in a position where it could not satisfy its obligations under the La Posada Joint Operating Agreement. The Trustee further alleges that the actions of the individual defendants rendered CLK insolvent or otherwise deepened the insolvency of CLK. Greenhill and Choctaw contend that these allegations do not support a breach of fiduciary claim under Delaware law.

-18-

CLK is a Delaware limited liability company and the duties of its officers and directors are governed by Delaware law. Under Delaware law, a corporate officer owes duties of loyalty and care. Stone v. Ritter, 911 A.2d 362, 369-70 (Del. 2006). The duty of loyalty is the duty to act with independence and disinterestedness in the best interest of the corporation and to refrain from usurping corporate opportunities and engaging in self-dealing transactions. Goth v. Loft, Inc., 5A2d 503, 510 (Del. 1939). The duty of loyalty includes a duty of good faith. See In re Walt Disney Co. Deriv. Litig., 906 A.2d 27 (Del. 2006). The duty of care is the duty to be informed of all material information and to act as an ordinary person would in the management of his own affairs. Brehm v. Eisner, 746 A.2d 244, 262 (Del. 2000). When a party challenges a director's conduct, Delaware's business judgment rule presumes "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." Aronson v. Lewis, 473 A. 2nd 805, 812 (Del. 1984).

However, the application of fiduciary duties in the case of a Delaware LLC differs from the application of those duties in the corporate context. Fiduciary obligations in the corporate context are based on the "status" of the parties, while the duties owed by an individual who manages or controls an LLC is governed by

contract.  See, e.g., Justice Myron T. Steele, "Judicial Scrutiny of Fiduciary Duties in Delaware Limited Partnerships and Limited Liability Companies," 32 Del. J. Corp. L. 1 (2007).  Delaware's LLC Act provides that an LLC agreement may modify or even eliminate the fiduciary duties of an LLC's managers.  See Delaware LLC Act §18-1101(c).  The only duty that cannot be eliminated is the duty of good faith and fair dealing.  Id.  If the LLC agreement is silent as to those duties, Delaware courts will generally default to the fiduciary duties applicable to a corporation.  Flight Options Int'l, Inc. v. Flight Options, LLC, C.A. No. 1459-N, Slip op. at 17, n.28 (Del. Ch. Sept. 20, 2005).  Accordingly, the scope of a manager's duties in the LLC context turns on the applicable LLC agreement.

In the present case, Greenhill and Choctaw contend that CLK's operating agreement defines the parties' fiduciary duties, and that the Trustee's allegations in Count 5 do not state a claim for the breach of those duties.  The Trustee's allegations appear to be based on the default duties that would be applicable if CLK's operating agreement was silent as to the parties' duties.  Count 5 makes no reference to CLK's operating agreement, nor is it clear whether the Trustee's allegations establish grounds for a claim that the defendants breached the duties set forth in the agreement. Accordingly, those allegations do not give the defendants fair notice of the basis for the Trustee's claims in Count 5 and must be re-pled.

-20-

Count 5 also appears to base the Trustee's fiduciary duty claims on allegations that the defendant's conduct deepened CLK's insolvency. (Complaint at ¶¶ 58, 62.) As the Fifth Circuit has recently recognized, Delaware courts have eliminated deepening insolvency as a cause of action and as an independent ground for damages under Delaware law. *See*, *e.g.*, <u>Trenwick Am. Litigation Trust v. Ernst & Young, LLP</u>, 906 A. 2nd 168 (Del. Ch. 2006); <u>Torch Liquidating Trust v. Stockstill</u>, 561 F.3d 377, 391 n.16 (5th Cir. 2009) (recognizing that Delaware courts have rejected deepening insolvency as a cause of action); <u>Wooley v. Faulkner (In re SI Restructuring, Inc.)</u>, 532 F.3d 355, 363 (5th Cir. 2008) (same). Recent Delaware decisions have also rejected claims based on duties to corporate creditors when a corporation approaches the "zone of insolvency." *See*, *e.g.*, <u>North American Catholic Educational Programming Foundation, Inc. v. Gheewalla</u>, 930 A. 2nd 92 (Del. 2007); <u>Torch Liquidating Trust</u>, 561 F.3d at 389 – 390. Yet, by referencing paragraph 49 of the Complaint, the Trustee appears to be basing his fiduciary duty claims (at least in part) on conduct causing injury to CLK's creditors. If so, the Trustee's claims may be foreclosed by <u>Gheewalla</u>. In short, the allegations in Count 5 are sufficiently ambiguous that they do not provide fair notice of the grounds for the Trustee's claims. Accordingly, the court **GRANTS** the Choctaw and Greenhill Motions, and orders that the Trustee re-plead the allegations supporting Count 5 of the Complaint.

-21-

**CONCLUSION**

For the reasons stated above, the court **GRANTS** the Greenhill Motion and the Choctaw Motion as follows: the Trustee shall file an amended complaint within **20 days** that addresses the deficiencies set forth herein with respect to Counts 1, 3, 4, and 5 of the Complaint. In all other respects, the Greenhill Motion and the Choctaw Motion are **DENIED.**

**IT IS SO ORDERED.**

###