**SO ORDERED.**

**SIGNED March 31, 2011.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE:

CLK ENERGY PARTNERS, LLC                    CASE NO. 09-50616

    Debtor                              Chapter 7
----------------------------------------------------------------
JOHN W. LUSTER, TRUSTEE
FOR THE BANKRUPTCY ESTATE
OF CLK ENERGY PARTNERS, LLC

VERSUS                                      ADVERSARY NO. 09-05042

GREENHILL CAPITAL
PARTNERS II, L.L.P., ET AL

----------------------------------------------------------------
REASONS FOR DECISION
----------------------------------------------------------------

    The defendants in this adversary proceeding have filed motions challenging the plaintiffs' amended complaint. Choctaw Producing Company, LLC ("Choctaw"), Richard J. Gardner, Brent Kovach, Roland R. Londot, and Robert E. McKee, III, filed a motion to strike for failure to comply with FRCP 9(b), and to dismiss for failure to

state a claim (the "Choctaw Motion"). Greenhill Capital Partners, II, L.L.P., Greenhill Capital Partners (Cayman) II, L.L.P., Greenhill Capital Partners (Executives) II, L.L.P., Greenhill Capital Partners (Employees) II, L.L.P., Frank Pottow, Christopher Ortega, and Ralph Bailey filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) (the "Greenhill Motion"). The court previously granted the defendants' motions for a more definite statement under Rule 12(e), and ordered the Trustee to file an amended complaint. Following a hearing, the court took these motions under advisement. After reviewing the parties' submissions, the amended complaint, and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

## BACKGROUND

CLK is a Delaware limited liability company formed on May 20, 2005, for the purpose of acquiring, developing and operating oil and gas leases and marketing and selling the hydrocarbons acquired from those leases. The initial members of CLK were Greenhill, Rock Creek and Choctaw. CLK's Limited Liability Company Agreement (the "LLC Agreement") designated Choctaw as the "Management Member" and

-2-

Rock Creek and Greenhill as the "Investor Members." The LLC Agreement further provided that CLK's Board of Managers would consist of two managers appointed by Choctaw and three managers appointed by Greenhill. Greenhill appointed as its representatives on CLK's board defendants Pottow, Ortega and Bailey. Choctaw designated defendants McKee and Gardner as its representatives on CLK's board. Greenhill and Rock Creek initially contributed $9.5 million in cash to CLK, and Choctaw contributed approximately $2 million in property to CLK. The Trustee alleges that Greenhill and Rock Creek were obligated to make an additional capital contribution of $9.5 million. Greenhill contends that the additional capital contribution could not be requested before May 20, 2007, pursuant to section 4.5 of CLK's LLC Agreement.

In May 2006, CLK's Board of Managers signed a "Consent of Managers" directing CLK to cease operations and expenditures. The Trustee contends that defendants Gardner, Kovach, McKee and Londot "continued to engage in prohibited transactions resulting in damage to [CLK]." (Amended Complaint at ¶ 14) Specifically, the Trustee alleges that CLK subsequently entered into a Joint Operating Agreement with Petroquest and other third parties that obligated CLK to pay a portion of the cost of drilling the La Posada Well Prospect. According to the Trustee, the defendants knew that CLK

-3-

could not satisfy its financial commitments under the Joint Operating Agreement.

In October 2006, Choctaw agreed to purchase Greenhill's membership interest in CLK and further agreed to assume all duties, liabilities, and obligations arising from Greenhill's membership interest in CLK. In connection with the sale, the parties executed a mutual release that released Greenhill's contribution obligations under the LLC Agreement. The Trustee alleges that Choctaw compelled CLK to provide security for a $2.5 million line of credit needed to fund Choctaw's purchase of Greenhill's interest.

The La Posada Well Prospect was not successful. Petroquest and CLK's other partners in the La Posada Well Prospect filed lawsuits in state court against CLK when it failed to pay its share of the costs of drilling the well. On May 8, 2009, CLK was placed into involuntary bankruptcy by Petroquest and other creditors. The order for relief was entered on May 29, 2009. The case was subsequently converted to a case under Chapter 7.

The Trustee subsequently commenced the present adversary proceeding seeking to recover unpaid capital contributions from Greenhill and Rock Creek pursuant to sections 542(b) and 544(b)(1) of the Bankruptcy Code. The Trustee also asserts state law alter ego and breach of fiduciary duty claims against the defendants.

-4-

**DISCUSSION**

**A.  Rule 12(b)(6) Standard**

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure provides that Rule 12(b)(6) of the Federal Rules of Civil Procedure applies in adversary proceedings.  Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570; <u>see</u> <u>also</u> <u>Elsensohn v. St. Tammany Parish Sheriff's Office</u>, 530 F.3d 368, 372 (5th Cir.2008) (quoting <u>Twombly</u>, 550 U.S. 544, 127 S.Ct. at 1974, 167 L.Ed.2d 929).  A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Twombly</u>'s plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 129 S.Ct. at 1949(internal

-5-

citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. (quotation marks, citations, and footnote omitted). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. <u>Sonnier v. State Farm Mutual Auto. Ins. Co.</u>, 509 F.3d 673, 675 (5th Cir. 2007); <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. <u>Spivey v. Robertson</u>, 197 F.3d 772, 774 (5th Cir. 1999), <u>cert</u>. <u>denied</u>, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The pleadings include the complaint and any documents attached to it. <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000). The court may also consider documents that are attached to the motion to dismiss if the documents are specifically referenced in the complaint and are "central" to the plaintiff's claim. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

-6-

**B. Count 1:  Sections 542 and 544**

Count 1 of the Amended Complaint asserts claims under sections 542 and 544(b) of the Bankruptcy Code.  The Trustee alleges that the release of Greenhill's contribution obligations under CLK's LLC Agreement is avoidable as a fraudulent transfer under Delaware Code Title 6 Sections 1301-1311, and Louisiana Civil Code Articles 236-2044.  The Trustee then alleges that Greenhill's obligation under the LLC Agreement to contribute capital to CLK constitutes "a debt to the estate that is matured, payable on demand, or payable on order" and is subject to turnover under 11 U.S.C. § 542(b). Greenhill now challenges Count 1 under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the allegations supporting Count 1 fail to state a claim upon which relief can be granted.  The court agrees with the Trustee that the allegations in the Amended Complaint with respect to Count 1 satisfy Rule 8(a) of the Federal Rules of Civil Procedure, and that these allegations provide Greenhill fair notice of the grounds upon which the Trustee's claim rests.  However, compliance with Rule 8(a) is not dispositive of whether the allegations of the complaint state a "plausible" claim for relief.  See Twombly, 550 U.S. at 556-567, 570; Iqbal, 129 S.Ct. at 1949-50; In re Image Masters, Inc., 421 B.R. 164, 180 (Bankr. E.D. Pa. 2009) (granting motion to dismiss avoidance claim grounds that the complaint did not plead

-7-

"sufficient factual matter to state a claim for relief for avoidance ... that is plausible on its face.") Accordingly, the court turns to Greenhill's request for relief under Rule 12(b)(6).

While Count 1 seeks to avoid the release of Greenhill's capital contribution obligations, the relief ultimately requested in Count 1 is a turnover of unpaid capital contributions pursuant to section 542(b). Section 542(b) provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee...." The Trustee contends that Greenhill has a $8.5 million unpaid capital contribution under CLK's LLC Agreement, and that this unpaid capital contribution is "matured, payable on demand, or payable on order." Amended Complaint at ¶22. The court may consider the contents of the CLK LLC Agreement because that agreement is specifically referenced in the Complaint. See, e.g., Bryant v. Avado Brands, Inc., 187 F.3rd 1271, 1281 (11th Cir. 1999); Chambers v. Time Warner, Inc., 282 F.3rd 147, 153 n.3 (2nd Cir. 2002). Section 4.3 of the LLC Agreement addresses the payment of capital contributions by the "Investor Members" of CLK. Section 4.3(b) provides that "each investor member shall pay to the company the capital contribution set forth in a written notice (a) "Call Notice" for an additional capital contribution from the Board of Managers...." Section

-8-

4.3(c) further provides that "in the event that the Investor Members have not made aggregate capital contributions equal to their respective maximum commitments before the second anniversary of the delivery date, Management Member shall be authorized to issue a Call Notice to Investor Members...." Sections 4.3(b) and (c) include requirements as to the contents of the Call Notice, including the total amount of the capital contribution and the purpose of the contribution. A debt is "matured, payable on demand, or payable on order" only if the debt is presently payable as opposed to a debt that is contingent and "payable only upon the occurrence of a certain act or event." In re Porter-Hayden Co., 304 B.R. 725, 732 (Bankr. D. Md. 2004) (quoting 5 Collier on Bankruptcy ¶542.03). Here, the trigger for a capital payment obligation is a Call Notice under LLC Agreement. Yet, the Amended Complaint does not allege that a Call Notice or any other request for additional capital contributions had been made either at the time of the Greenhill release or the commencement of CLK's bankruptcy case. Accordingly, even if the Trustee successfully avoids the release, there was no debt that was property of the estate as of the commencement of this case that was matured, payable on demand, or payable on order because any obligation to contribute additional capital was contingent on the occurrence of a future act or event: a Call Notice under Section 4.3 of the LLC Agreement.

-9-

In sum, the Trustee's allegations cannot support a claim under section 542(b). The Trustee's avoidance allegations under section 544(b) are apparently asserted in support of the Trustee's ultimate request for turnover under section 542(b). Given that the Trustee has not pled facts to support a claim under section 542(b), the court need not reach Greenhill's challenge to the Trustee's avoidance allegations. The court grants the Greenhill Motion as to Count 1.

## C. Count 2:  Section 544 and La. Rev. St. 12:1322

In Count 3 of the Amended Complaint, the Trustee seeks relief under sections 544(a) and 544(b)(1) of the Bankruptcy Code and Louisiana Revised Statute 12:1322. The Trustee contends that, under sections 544(a) and 544(b)(1), he possesses "the rights and powers of a creditor such as the parties who contracted with CLK in the [La Posada Joint Operating Agreement] signed on July 20, 2006...as they extended credit to the debtor at the time of the execution of the  [La Posada Joint Operating Agreement]...." (Amended Complaint at ¶36.) According to the Trustee, the parties to the La Posada Joint Operating Agreement, as creditors of CLK, could enforce Greenhill's capital contribution requirements under Louisiana Revised Statute 12:1322. Louisiana Revised Statute 12:1322(B) and (C) states that:

> B.    Except as provided in a written operating agreement, a member's obligation to the limited liability company to perform any

-10-

enforceable promise to contribute cash or property or to perform services shall not be discharged if he is unable to perform because of death, disability, or other reason. If a member does not make the required contribution of property or services, he or his personal representative is obligated, at his or his personal representative's option, to either contribute cash equal to that portion of value of the stated contribution which has not been made or forfeit his entire membership interest, or, in the case of a personal representative, forfeit all rights in such membership interest to which he may otherwise be entitled. However, a creditor of a limited liability company who extends credit after a member signs a writing which reflects the obligation and before any such election to forfeit the membership interests is made may enforce the original obligation to the extent that the limited liability company refuses or is unable to honor the extension of credit.

C.  Unless otherwise provided in a written operating agreement, the obligation of a member to make a contribution or return money or other property paid or distributed in violation of this Chapter may be compromised only with the unanimous consent of the members. Notwithstanding such a compromise, a creditor of a limited liability company who extends credit or otherwise acts in reliance on that obligation, after a member signs a writing which reflects the obligation and before the amendment or compromise, may enforce the original obligation to the extent that the limited liability company refuses or is unable to honor the extension of credit.

Since the contracting parties are able to assert a claim under 12:1322, the Trustee contends that he is empowered under sections 544(a) and 544(b)(1) to enforce any capital contribution obligations in CLK's LLC Agreement.

-11-

These allegations fail to state a viable claim for relief for at least two reasons. First, as Greenhill points out, sections 544(a) and 544(b)(1) allow the Trustee to rely on state law avoidance provisions to avoid a transfer of estate property or avoid an obligation incurred by the debtor. <u>See</u> 11 U.S.C. §§ 544(a), 544(b)(1). However, Louisiana Revised Statute 12:1322 is not an avoidance statute in the sense that it empowers a creditor to avoid a transfer of property or an obligation incurred by the debtor. This provision provides standing to an individual creditor to affirmatively enforce capital contribution obligations contained in a limited liability company agreement. <u>See</u> La. R.S. 12:1322(b) and 12:1322(c). Accordingly, the Trustee cannot rely on section 544 to enforce a creditor's rights under Louisiana Revised Statute 12:1322 because section 544 applies only to avoidance actions. It does not "clothe the trustee with all of the rights held by the creditors prior to bankruptcy." <u>In re Teligent, Inc.</u>, 307 B.R. 744, 749 (Bankr. S.D.N.Y. 2004); <u>see also</u> <u>In re Granite Partners, L.P.</u>, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996)(citing <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 118 (2d Cir. 1991)) (Section 544(b) does not extend beyond avoidance actions to encompass the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors); <u>Hirsch v. Arthur Andersen & Co.</u>, 72 F.3d 1085, 1093 (2d Cir. 1995).

-12-

Second, Louisiana Revised Statute 12:1322 does not apply to a Delaware limited liability company ("LLC") such as CLK. The Trustee relies on Louisiana Revised Statute 12:1347(3) to support the application of section 12:1322 to CLK. Section 12:1347 provides that "a foreign limited liability company which receives a certificate of authority shall ...[e]xcept as otherwise provided in this Chapter, be subject to the same duties, restrictions, penalties, and liabilities as are imposed upon limited liability companies organized under the laws of this state." Section 12:1347, however, governs the duties and obligations of the *LLC* when it conducts business in the state, not the internal relationship of the LLC and the liability of its members and managers. The internal governance of a foreign LLC is governed by the laws of the state in which it was formed. <u>See</u> La. R.S. 12:1342 ("The laws of the state or other jurisdiction under which a foreign limited liability company is organized shall govern its organization, its internal affairs, and the liability of its managers and members that arise solely out of their positions as managers and members."); 9 La. Civ. L. Treatise LLC & Partnership Bus. & Tax Planning §1.73 (3rd Edition) ("When a foreign LLC receives a certificate of authority, it is authorized to transact business in Louisiana and has the same rights and duties as a Louisiana LLC, except that the laws of the jurisdiction under which

-13-

the foreign LLC was formed govern issues regarding the organization in internal affairs of the LCC and the liability of its managers and members in their capacity as such."). The provisions of Louisiana Revised Statute 12:1322 relied on by the Trustee relate squarely to the "internal affairs of the LLC and the liability of its managers and members in their capacities as such..." Id. As a result, the provisions of section 12:1322 are inapplicable to CLK under 12:1342 because CLK is a Delaware LLC. The Court grants the Greenhill motion with respect to Count 3.

**D. Count 5: Breach of Fiduciary Duty**

Both Greenhill and Choctaw challenge the claims in Count 5 of the Amended Complaint. The court previously ordered the Trustee to replead the breach of fiduciary duty claims in Count 5 on the grounds that the Trustee had failed to state a claim under Delaware law. In the Amended Complaint, the Trustee alleges that defendants Gardner, McKee, Pottow, Ortega, and Bailey breached their fiduciary duties by authorizing the sale of Greenhill's LLC interest and by approving the release of Greenhill's capital contribution obligation under CLK's LLC Agreement. According to the Trustee, these defendants breached their fiduciary duties "and failed to employ a rational decision making process" when they authorized the sale of Greenhill's LLC interest and authorized the release of CLK's contribution obligations. The Trustee contends that these

-14-

defendants "knew or reasonably should have known that the Debtor was clearly undercapitalized and in poor financial condition at the time of the Sale and the Release" and that "the unpaid capital contributions of Greenhill and Rockcreek were necessary for the continued economic viability of the Debtor." (Amended Complaint at ¶58.) The Trustee alleges that the actions of the defendants amounted to a violation of their duties of care, diligence and loyalty. The Trustee also asserts that these actions violated these defendants' "fiduciary duty of good faith and fair dealing owed to the Debtor." (Amended Complaint at ¶59.) Greenhill and Choctaw contend that Count 5, as amended, fails to state a claim for which relief can be granted.

The court agrees that the Amended Complaint does not cure the fatal flaws in the fiduciary duty claims asserted in Count 5. As the court noted in its prior ruling, Delaware's LLC Act provides that an LLC agreement may modify or even eliminate the fiduciary duties of an LLC's managers. See Delaware LLC Act Section 18-1101(c). Delaware courts have repeatedly ruled that the elimination of these duties in an LLC agreement is permissible under the Delaware LLC Act and that the elimination of these duties precludes fiduciary duty claims involving an LLC's managers and members. See, e.g., Related Westpac LLC v. Jer Snow Mass LLC, 2010 WL2929708 at *1 (Del. Ch. July 23, 2010) (refusing to "impose a

-15-

remedy inconsistent with the plain terms of the [LLC] Operating Agreements"); In re Atlas Energy Resources, LLC, 2010 WL4273122 *12 (holding that the language of the LLC Agreement "unambiguously eliminates the traditional fiduciary duties of [the LLC's] directors and officers."); R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC, 2008 WL3846318 at *4 (Del. Ch. Aug. 19, 2008) ("Delaware's LLC Act leaves to the members of a limited liability company the task of 'arranging a manager/investor governance relationship;' the act generally provides defaults that can be modified by contract."). The only duty that cannot be eliminated contractually under Delaware law is the duty of good faith and fair dealing. Accordingly, the scope of a manager's duties to an LLC turns on the treatment of those duties in the governing LLC agreement.

Here, the contents of CLK's LLC Agreement may be considered on a motion to dismiss because the agreement is referenced in the Trustee's complaint. See Sullivan, 600 F.3d at 546. Section 1.6 of the CLK LLC Agreement states:

> (a) To the fullest extent permitted by the Act, a person in performing his duties and obligations as a Manager under this Agreement, shall be entitled to act or omit to act at the direction of the Member(s) that designated such person to serve on the Board of Managers, considering only such factors, including the separate interests of the designating Member(s), as such Manager or Member(s) choose

-16-

to consider, and any action of a Manager or
failure to act, taken or omitted in good faith
reliance on the foregoing provisions shall
not, as between the Company and other
Member(s), on the one hand, and the Manager or
Member(s) designating such Manager, on the
other hand, constitute a breach of any duty
(including any fiduciary or other similar
duty, to the extent such exists under the Act
or any other applicable law, rule or
regulation) on the part of such Manager or
Member(s) to the Company or any other Manager
or Member of the Company.

(b) The Members (and the Members on behalf of the
Company) hereby:

    (I) agree that (A) the terms of this
Section 6.7, to the extent that they
modify or limit a duty or other
obligation, if any, that a Manager
may have to the Company or any other
Member under the Act or other
applicable law, rule or regulation,
are reasonable in form, scope and
content; and (B) the terms of this
Section 6.7 shall control to the
fullest extent that possible if it
is in conflict with duty, if any,
that a Manager may have to the
Company or another Member, under the
Act or any other applicable law,
rule or regulation; and

    (ii) **waive to the fullest extent
permitted by the Act any duty or
other obligation, if any, that a
Member may have to the Company or
another Member, pursuant to the Act
or any other applicable law, rule or
regulation, to the extent necessary
to give effect to the terms of this
Section 6.7.**

(c) The Members (including Management Member), and
the Members on behalf of the Company,

-17-

> acknowledge, affirm and agree that (I) the
> Investor Members would not be willing to make
> an investment in the Company, and no person
> designated by the Investor Members to serve on
> the Board would be willing to so serve, in the
> absence of this Section 6.7, (ii) they have
> reviewed and understood the provisions of the
> §§18-1101(b) and (c) of the Act, and (iii)
> nothing in this Section 6.7 shall constitute a
> waiver of a claim for breach of the provisions
> of this Agreement by a party hereto."

(emphasis added). These provisions eliminate the corporate law fiduciary duties between CLK and its managers and members. In light of the elimination of fiduciary duties by CLK's LLC Agreement, the Trustee cannot state a claim against Gardner, McKee, Pottow, Ortega, and Bailey based on their alleged breaches of the fiduciary duties of care, diligence, and loyalty as is currently pled in the Amended Complaint.[1]

---

[1] Choctaw also contends in its motion to dismiss that the Trustee is relying on a "deepening insolvency" cause of action or theory of damages in Count 5 of the Amended Complaint. The court granted Choctaw's prior motion for a more definite statement, in part, on the basis of allegations in the Trustee's original complaint that the defendants' conduct deepened CLK's insolvency. As the court previously noted, Delaware courts have expressly eliminated deepening insolvency as an independent cause of action and grounds for damages under Delaware law. See, e.g., Porch Liquidating Trust v. Stockstill, 561 F.3rd 377, 391n.16 (5th Cir. 2009) (recognizing that Delaware courts have rejected deepening insolvency as a cause of action). The Amended Complaint, however, removes the language from the original complaint seeking to recover damages based on conduct that allegedly "deepened" CLK's insolvency. Taking the allegations of Count 5 as a whole, the Trustee no longer appears to be basing his claims on a deepening insolvency cause of action or theory of damages.

-18-

While the language of CLK's LLC Agreement and the Delaware LLC Act preclude the fiduciary duty claims asserted in Count 5, they do not foreclose a claim that the defendants violated the covenant of good faith and fair dealing under Delaware law. The implied covenant of good faith and fair dealing under Delaware law "inheres in every contract" and requires parties to a contractual relationship to "refrain from arbitrary or unreasonable conduct which has the affect of preventing the other party to the contract from receiving the fruits of the bargain." Kuroda v. SPJS Holdings, LLC, 971 A. 2d 872, 888 (Del. Ch. 2009); Dunlap v. State Farm Fire & Casualty Co., 878 A. 2d 434, 442 (Del. 2005). This implied covenant does not constitute "a free floating duty imposed on a contracting party," but must be used "conservatively" to ensure that the contracting parties' "reasonable expectations are fulfilled." Kuroda, 971 A. 2d at 888. In order to state a claim for breach of the covenant of good faith and fair dealing under Delaware law, a plaintiff must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and in resulting damage to the plaintiff." Id. General allegations of bad faith are insufficient to support a claim for breach of the covenant of good faith and fair dealing. Id. In other words, this cause of action is grounded on the parties' contract, not on general fiduciary duties arising from the "status"

-19-

of the contracting parties.  Id.  Moreover, the implied covenant of good faith and fair dealing cannot be used to vary the express terms of a contract.

Here, the Amended Complaint alleges that the conduct of Gardner, McKee, Pottow, Ortega, and Bailey "violated their fiduciary duty of good faith and fair dealing." (Amended Complaint at ¶59.)  However, it does not identify any specific implied contractual obligation flowing from the LLC Agreement, nor does it plead how that implied obligation was breached. Instead, the Amended Complaint appears to meld its allegation of bad faith with its fiduciary duty allegations. As stated above, the LLC Agreement eliminates fiduciary duties.  A good faith and fair dealing claim is rooted in the parties' contract, not in a fiduciary duty independent of the contract.  Accordingly, the Amended Complaint fails to state an independent claim for breach of the implied covenant of good faith and fair dealing.  The court grants the Choctaw and Greenhill motions as to Count 5.

**E.  Count 4:  Alter Ego**

Choctaw challenges the Trustee's alter ego claim in Count 4 of the Amended Complaint.  In Count 4, the Trustee attempts to pierce the corporate veil of CLK and Choctaw to hold Gardner, Kovach, McKee and Londot "personally liable for the capital contributions amounting to approximately $9.5 million, released by their

-20-

actions." (Amended Complaint at ¶53.) According to the Trustee, Choctaw and CLK "were mere alter egos of their principles....and that these defendants used the corporate structure of CLK and Choctaw to undertake the financial obligations beyond corporate means and shield themselves from personal liability when they knew CLK and Choctaw had no means to satisfy the obligations being incurred." (Amended Complaint at ¶52.) The obligation referred to in the Amended Complaint is the La Posada Joint Operating agreement that CLK entered into in July 2006. Choctaw moved to dismiss Count 4 on the grounds that the Trustee's alter ego allegations fail to state a claim upon which relief can be granted.

As the court noted in its ruling on the defendants' prior motions for more definite statement, Delaware law applies to the Trustee's alter ego allegations with respect to CLK. See, Lonestar Industries, Inc. v. Redline, 757 F.2nd 1544, 1548 n.3 (5th Cir. 1985). However, Louisiana law would apply to the attempt to pierce the corporate veil of Choctaw because Choctaw is a Louisiana LLC. The elements of the alter ego doctrine are similar under Delaware and Louisiana law. Under Delaware law, the Trustee must show (1) that the individual defendants "operated as a single economic entity" and (2) that an "overall element of injustice or unfairness....[is] present." Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076, 1085 (D. Del. 1990). The

required "injustice or unfairness" must arise from facts showing that the "corporation [is] a sham and exists for no other purpose than as a vehicle for fraud." Official Committee of Unsecured Creditors of RSL Com Primecall, Inc. v. Beckoff, 2003 WL #22989669 at *15 (Bankr. S.D. N.Y. December 11, 2003). Delaware courts generally apply the same standards to pierce the veil of an LLC as they apply to pierce the veil of a corporation. In Louisiana, the alter ego doctrine is usually limited to "situations where fraud or deceit has been practiced by the shareholder acting through the corporation." ORX Resources, Inc. v. MBW Exploration, LLC, 32 South 3rd 931, 935 (La. App. 4th Cir. 2010). The doctrine is used to "prevent the use of the corporate form in defrauding creditors." Id. (quoting Riggins v. Dixie Shoring, Co., Inc., 590 South 2nd 1164, 1168 (La. 1991). In Riggins, the court observed that corporate distinctions should not be disregarded under the alter ego doctrine in a case involving contractual or commercial relationships "absent very compelling equitable considerations." 592 S. 2d at 1285. Moreover, as the court held in its ruling granting Choctaw's prior motion for a more definite statement, the inequitable conduct that must be pled to support an alter ego finding must arise from a misuse of the corporate forum and cannot be based solely on the allegations supporting the underlying cause of action. The Amended Complaint includes additional allegations

-22-

addressing alleged inequitable conduct with respect to CLK and Choctaw.

Are these new allegations in Count 4 sufficient to avoid dismissal? The court agrees with the Trustee that the allegations in Count 4 cure the pleading defects that the court addressed in its prior ruling on Choctaw's motion for more definite statement. Count 4, however, cannot stand on its own in light of the court's dismissal of the claims in Counts 1, 2, and 5 of the Amended Complaint. The alter ego doctrine is an equitable remedy, not an independent cause of action. <u>Peacock v. Thomas</u>, 516 U.S. 349, 354 (1996) (request to pierce the corporate veil is not an independent cause of action "but rather is a means of imposing liability on an underlying cause of action.")(quotation omitted); <u>Local 159 v.</u> <u>Nor-Cal Plumbing, Inc.</u>, 185 F.3d 978, 985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."); <u>In re Grothues</u>, 266 F.3d 334, 337-38 (5th Cir. 2000) (recognizing that the alter ego theory is a remedy to enforce a substantive right, not an independent cause of action); <u>Western Oil & Gas. JV, Inc. v. Griffiths</u>, 91 Fex. Appx. 901, 904 (5th Cir.2003) ("Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action."); <u>Tamko Roofing Products, Inc. v. Smith Engineering Co.</u>,

450 F.3d 822 (8th Cir. 2006) (same); <u>In re EBW Laser, Inc.</u>, 2009 WL
116995 at *5 (Bankr. M.D.N.C. Jan 15, 2009)(same); 1 William Meade
Fletcher, Fletcher Cyclopedia of the Law of Private Corporations §
41.10 (2002).[2]

The Trustee's alter ego allegations pertain to the allegations
and claims in Counts 1, 2, and 5 of the Amended Complaint relating
to Greenhill's capital contribution obligations, the release of
those obligations and CLK's participation in the La Posada
prospect. Since these claims have been dismissed, there can be no
alter ego remedy based on these claims. Accordingly, the court
grants the Choctaw Motion with respect to Count 4.

**F. Leave to Replead**

The Trustee requests leave to replead if the Greenhill and
Choctaw motions are granted. Rule 15(a) of the Federal Rules of

---

[2] According to Fletcher's Cyclopedia of the Law of Private
Corporations:

> A claim based on the alter ego theory is not in itself
> a claim for substantive relief, but rather to disregard
> the corporation as a distinct defendant is procedural.
> **A finding of fact of alter ego, standing alone, creates**
> **no cause of action. It merely furnishes a means for a**
> **complainant to reach a second corporation or individual**
> **upon a cause of action that otherwise would have**
> **existed only against the first corporation.** An attempt
> to pierce the corporate veil is a means of imposing
> liability on an underlying cause of action, such as a
> tort or breach of contract.

1 Fletcher Cyclopedia of the Law of Private Corporations § 41.10
(emphasis added).

-24-

Civil Procedure states that leave to amend "shall be freely given when justice so requires." Ordinarily, the court will grant leave to replead following the first motion to dismiss under Rule 12(b)(6). In the present case, however, the court previously allowed the Trustee to replead after granting Choctaw's and Greenhill's motions for more definite statement. Accordingly, the court grants the request to replead in part and denies the request in part. The court denies leave to replead as follows:

(1)  the court denies leave to replead the Trustee's section 542(a) claim in Count 1 of the Amended Complaint;

(2)  the court denies leave to replead the Trustee's section 544 claim in Count 2 of the Amended Complaint to the extent that claim is based on Louisiana Revised Statute 12:1322; and

(3)  the court denies leave to replead the breach of fiduciary duty claims in Count 5 of the Amended Complaint.

Given the prior opportunity to replead these claims, the court concludes that leave to amend these claims would be futile. See Goldstein v. MCI WorldCom, 340 F.3d 238, 254 (5th Cir. 2003). In all other respects, the court grants the Trustee leave to re-plead.

## CONCLUSION

For the foregoing reasons, the court GRANTS the Greenhill and Choctaw motions to dismiss. The court GRANTS leave to replead as

set forth herein.  The Trustee shall file an amended complaint in conformity with the court's ruling herein within twenty (20) days. An order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###